CASE 12—ACTION AGAINST CARRIER FOR DAMAGES—OCT. .10

# Louisville & Nashville R. R. Co. v. Farmers & Drovers Live Stock Commission Firm.

APPEAL FROM JEFFERSON CIRCUIT COURT, COMMON PLEAS DIVISION.

1. CARRIERS OF STOCK—DELIVERY TO CONNECTING CARRIER.—It is the duty of a carrier of live stock which undertakes a shipment to its terminus and delivery to a connecting carrier for transportation to a point beyond, to know whether its connecting line is prepared to promptly forward such stock, and if from any unforeseen and unexpected cause the connecting carrier is unable

L. & N. R. R. Co. v. Farmers & Drovers Live Stock Commission Firm.

promptly to forward it, it is the duty of the first carrier to forward by some other route or to notify the shipper promptly of the facts; and a failure to comply with this duty will render it liable for damages.

2. INSTRUCTION—HARMLESS. Although an instruction may be technically inaccurate, if the recovery was the actual amount of the loss, the error is a harmless one and will be disregarded.

LYTTLETON COOKE FOR APPELLANT.

1. In the absence of special contract, common carrier is not liable beyond its own lines. Bryan v. Memphis & P. R. R. Co., 11 Bush, 597; Hutchinson on Carriers (2d ed.), sec. 152.

2. Variance between petition and evidence. Hall, exr., v. Penn. Co., 90 Ind., 459; s. c. 16 Am. & Eng. R. R. Cases, 165; Rogers v. Estis, Litt. Sel. Cases, 2.

3. Juries not to be left to assess damages by guess work. Shearman & Redfield on Negligence (4th ed.), sec. 740; Erie Iron Works v. Barbour, 102 Penn. St., 156; Louisville Southern R. R. Co. v. Minogue, 90 Ky., 375.

4. Shippers bound by terms of bills of lading when fairly made and accepted without protest or objection. Adams Express Co. v. Nock, 2 Duv., 562; Same v. Loeb & Bloom, 7 Bush, 499; Same v. Guthrie, 9 Bush, 80; L. & N. R. R. Co. v. Brownlee, 14 Bush, 590; Insurance Co. v. Railroad Co., 104 U. S., 157; Myrick v. Michigan Cent. R. R. Co., 107 U. S., 102; Hart v. Penn. R. R. Co., 112 U. S., 331; Lawson on Contracts, sec. 240; Hutchinson on Carriers (2d ed.), secs. 149b and 154.

5. Instruction in this case contrary to law as declared by this court. L., St. L., &c., R. R. Co. v. Bourne, &c., 16 Ky. Law Rep., 825.

6. Carriage of live stock does not impose upon carriers common law liabilities, &c. Michigan Southern R. R. Co. v. McDonough, 21 Mich., 165; L. C., &c., R. R. Co. v. Hedger, 9 Bush, 647; Baker v. L. & N. R. R. Co., 10 Lea., 304; s. c. 16 Am. & Eng. R. R. Cases, 149; Lake Shore R. Co. v. Perkins, 25 Mich., 329.

7. In respect to misconduct of attorneys in their closing speeches to juries. Berry v. State, 10 Georgia Reps., 522; B. & O. R. R. Co. v. Boyd, 30 Am. & Eng. R. R. Cases, 378.

EDWARD W. HINES ON THE SAME SIDE.

1. A contract by a common carrier by which it restricts its liability to its own line is not a limitation of its common law liability. Ireland v. Mobile & O. Ry. Co., 20 Ky. Law Rep., 1586. And such a limitation is valid and has been so held by this court under a contract identical in form with the one in the case at bar. L. & N. R. R. Co. v. Tarter, 19 Ky. Law Rep., 229; L. &

L. & N. R. R. Co. v. Farmers & Drovers Live Stock Commission Firm.

N. R. R. Co. v. Cooper, 19 Ky. Law Rep., 1152; L. & N. R. R. Co. v. Crozier, 13 Ky. Law Rep., 175.

2. In cases of doubt a contract should never be construed as to render any part of it invalid.

3. The evidence shows that the appellant did deliver the stock to the connecting carrier. Pratt v. Grand Trunk Line, 90 U. S., 43; Converse v. Norwich, &c., Tr. Co., 33 Conn., 166; Ray on Negligence of Imposed Duties of Freight Carriers, p. 384.

4. The court erred in instructing the jury as to the measure of damages.

M. A., D. A., AND J. G. SACHS IN A BRIEF AND SUPPLEMENTAL BRIEF FOR APPELLEES.

1. The contract in this case was made under such importunate necessity for immediate transportation as to constitute duress and extortion by appellant sufficient to avoid the special contract. Adams Express Co. v. Nock, 2 Duv., 562.

2. It was the duty of the appellant to know whether its connecting line could forward the stock promptly and to report to the shipper if the connecting line had no means of receiving for further transportation. Toledo R. R. v. Lockhart, 71 Ill., 627; Great W. R. R. v. Burns, 60 Ill., 284; Galena R. R. v. Rae, 18 Ill., 488; Wibert v. Railroad, 12 N. Y., 245; E. Tenn. & Ga. R. R. v. Nelson, 1 Colo., 272; Carter v. Peck, 4 Sneed, 203; South Ex. Co. v. Womack, 1 Heisk, 256; Place v. Union Ex. Co., 2 Hilton, 19; Ill. Cent. R. R. v. Waters, 41 Ill., 73; Great W. R. R. v. Hawkins, 18 Mich., 427; Parchard v. R. R., 14 Rich. (Law), 181; Sager v. R. R., 31 Me., 228; Empire T. Co. v. Wam Sutta Co., 63 Pa. St., 14; Condict v. R. R., 54 N. Y., 500; Ill. Cent. R. R. v. Cobb, 64 Ill., 128; Mich. Cent. R. R. v. Burrows, 33 Mich., 6; Lou. & Nash. R. R. Co. v. Robinson, 18 Ky. Law Rep., 275; Same v. Hawley, 10 Ky. Law Rep., 117; Same v. Bell., 13 Ky. Law Rep., 393; Peet v. Railway Co., 20 Wis., 594; Lovett v. Hobbs, 2d. Shower, 127; Riley v. Horne, 5 Bingh., 217; Conkey v. Railway, 31 Wis., 619; Goold v. Chapin, 20 N. Y., 259; Miller v. Navigation Co., 10 N. Y., 431; Hutchinson on Carriers, sec. 103, referring to 16 Wall., 318; 19 Minn., 376; 99 Mass., 220; 24 Ill., 477; 76 Ill., 520; 17 Heisk., 253; 32 Vt., 665; 3 Kern., 569; 45 N. Y., 622; Id., 524; 30 Id., 564.

3. The court below did not err in its instructions to the jury. L. & N. R. R. Co. v. Crozier, 13 Ky. Law Rep., 175.

See further Hale on Bailments and Carriers, pp. 464, &c., and cases cited: Myrick v. Railroad Co., 107 U. S., 102; Wehman v. Railway Co., 18 Minn., 22; Goold v. Chapin, 20 N. Y., 259; Condon v. Marquette Co., 55 Mich., 218; Conkey v. Railroad Co., 31 Wis., 619; Railroad Co. v. Mfg. Co., 16 Wall., 318; Barter v.

L. & N. R. R. Co. v. Farmers & Drovers Live Stock Commission Firm.

Wheeler, 49 N. H., 9; 33 N. Y., 610; 59 N. Y., 611; 1 Gray, 502; 7 Heisk. (Tenn.), 253; 10 Mo. App., 134; 16 Wall., 318; 21 Fed. Rep., 885, 25.

JUDGE BURNAM DELIVERED THE OPINION OF THE COURT.

Appellee sought in this action to recover damages from appellant and the Cleveland, Cincinnati, Chicago & St. Louis Railway Company for injury resulting from unneces-sary delay on their part in transporting four car loads of hogs, alleged to have been delivered to appellant on the 26th and 27th days of October, 1892, for shipment from Louisville, Ky., to Jersey City, N. J., over their own and connecting lines. The Louisville & Nashville Railroad Company admits the receipt by it of the four car loads of hogs at the time indicated, which, it says, were, by its contract of shipment, to be transported by it from Louisville, Ky., to Covington, Ky., and were there to be delivered to the Cleveland, Cincinnati, Chicago & St. Louis Railway Company, to be thence forwarded by said line to the terminus thereof, and there to be delivered to the next connecting line which might constitute a part of the route to Jersey City, N. J.; and says that, in accordance with its agreement as set forth in the contract of shipment, it promptly transported the hogs from Louisville to Covington, and delivered them in as good order as when received to the Covington Stock-Yards Company, who was the agent of the Cleveland, Cincinnati, Chicago & St. Louis Railway Company, and duly authorized by them to accept said delivery, that the stock-yards company prompt-ly notified the Cleveland, Cincinnati, Chicago & St. Louis Railway Company of the receipt of the hogs, and demand made that they should furnish cars for their continued transportation; that the delay in the shipment was oc-casioned wholly by the failure of the Cleveland, Cincinnati, Chicago & St. Louis Railway Company to furnish cars;

and alleges that appellee was promptly notified of such failure, and requested to give instructions as to what should be done with the hogs.

The Cleveland, Cincinnati, Chicago & St. Louis Railway Company, in its answer, denies that it is the connecting road with the Louisville & Nashville Railroad for transportation from Covington to points east of Cincinnati any more than divers other roads, or that it ever agreed in any way to receive the hogs, or did in any way receive them, and says that when these hogs were offered to it for transportation by the stock-yards people it declined to receive them, because it did not have sufficient cars and rolling stock at that time to transport them, and denies that it at any time came under any obligations to appellee in any way.

Appellee, by way of reply, denies that the hogs were ever delivered by appellant to the Cleveland, Cincinnati, Chicago & St. Louis Railway Company, and charges it with gross negligence in failing to promptly inform it of the failure of the Cleveland, Cincinnati, Chicago & St. Louis Railway Company to furnish cars and in failing to forward them by some other route.

The trial resulted in a verdict and judgment against appellant for the amount sued for.

The facts in the case are that on the 26th day of October, 1892, appellant received about 300 head of hogs, which were loaded in two of their double-deck cars for transportation from Louisville, Ky., to Jersey City, N. J., over its own and connecting lines; that these cars left Louisville on the afternoon of the 26th, and arrived in Covington early on the morning of the 27th; that on the 27th day of October it received another consignment of 290

hogs under a similar agreement, which reached Covington early on the morning of the 28th; that when the cars containing these hogs reached Covington they were turned over to one W. A. Peter, proprietor of the Covington Stock Yards, with directions that he should unload them from the cars in which they had been transported from Louisville, and that he should procure other cars for their further transportation from the Cleveland, Cincinnati, Chicago & St. Louis Railway Company, and see that they were properly loaded and forwarded to their destination.

The president of the stock yards testifies that as soon as the first shipment arrived on the morning of the 27th of October he notified the Cleveland, Cincinnati, Chicago & St. Louis Railway Company thereof, and requested it to furnish cars for their continued transportation, which it declined to do, assigning as a reason that it was short of cars; that he continued to make such requests three or four times a day, until the 29th, before notifying appellant of its failure to furnish the cars, but that on the 29th of October he telegraphed the agent of appellant in Louisville for instructions with regard to the further disposition of the hogs.

Thereupon appellant for the first time communicated to appellee the fact that the hogs had been held up in Covington. Appellee thereupon requested appellant to have the hogs forwarded at once over any route from which transportation could be had, and they left Covington for their destination late in the afternoon of October 31st. In the ordinary course of business they should have been forwarded on the evening of the days in which they arrived at the stock pens. The testimony shows that these hogs reached their destination five days after they were due, and that they were, to some extent, dam-

aged by shrinkage from the length of time in which they were en route.

It is the contention of appellant that the contract of shipment in this case did not require actual delivery of the hogs to its connecting line at Covington; that under the wording of the contract its liability was to cease when the goods were "ready to be delivered" to its connecting line.

The stock-yards company was not the agent of either appellant or the Cleveland, Cincinnati, Chicago & St. Louis Railway Company in the sense that they are responsible for any negligence on its part. As a matter of convenience, and by common consent of all the railroads centering in Covington, it was customary when live stock had to be changed from one route to another, or from one car to another, for all the railroads to deliver it to the stock-yards company for this purpose, who usually in addition to unloading the stock, fed and watered it, and assumed the responsibility of notifying the next connecting carrier to furnish the necessary cars, and, when so furnished, to reload same therein.

It was obligatory upon appellant, when it received the hogs, and contracted to transport them over its own and connecting lines to a point beyond its own line, to have known that the connecting lines were prepared to continue the transportation at the point of connection without undue delay. This was information easily within their reach in the ordinary course of business, and which it would have been more difficult for the shipper to have ascertained; and appellee had a right, under the contract of shipment, to expect of appellant the proper discharge of this duty; and if, from any unusual and unexpected cause, the connecting carrier

could not furnish facilities for continued transportation, it was the duty of appellant either to have promptly forwarded the hogs by some other route, or to have notified appellee of the facts, and for failure is liable to the shipper for any injury which results from unreasonable delay. See Hutchinson on Carriers, section 292, and cases there cited.

The delivery of the hogs by appellant to the stockyards company was not a delivery of them to the Cleveland, Cincinnati, Chicago & St. Louis Railway Company, so far as the rights of appellee were affected. Appellee did not authorize their delivery to the stock-yards company, and, so far as it was concerned, the actual custody remained with appellant. (See Hutchinson on Carriers, section 104, and Conkey v. Railway Co., 31 Wis., 619, [11 Am. R., 630]).

Appellant assumed to transport these hogs, by its own and connecting lines, from Louisville to Jersey City, and it can not escape the responsibility imposed upon it by law as a common carrier and forwarder of goods by stipulating that its liability for live stock intrusted to its care shall cease when it is *ready to be delivered* to a connecting carrier. The universal rule is that there must be actual or constructive delivery to such connecting carrier, so far as the shipper is concerned, before the initial carrier can relieve itself from responsibility under its contract.

The question as to whether or not the loss sustained in this case resulted from the negligence of appellant, either in its failure to see to the actual delivery of the hogs to its connecting line, to be forwarded by them to destination, or in not promptly notifying appellee of such failure on their part, was properly a question for the jury, and we think

Embry's Admrs. v. Harris.

the instructions given on this point fully and correctly state the law.

It is the contention of appellant that the instruction upon the measure of damage is not correct, and whilst it may be that this contention is technically right, yet the proof in the case is uncontradicted that the amount of the recovery was the actual loss sustained by appellee. This loss consisted not only in the depreciation in price and shrinkage in weight, but also the added charges for transportation and disposition of the hogs after they arrived at their destination.

For reasons indicated, the judgment is affirmed.